ALICE I. WHALEY, Plaintiff, *v.* EDWARD A. WHALEY, Defendant.

Supreme Court, Livingston County, May 17, 1924.

**Husband and wife — separation — grounds for separation under Civil Practice Act, § 1161, established.**

A separation will be granted a wife under section 1161 of the Civil Practice Act although only slight physical violence was used where the husband by accusations of immorality, threats of violence, calling indecent names, suggestions of abortion and a course of constant quarreling has caused a state of mental distress and nervousness and a condition of physical health on the part of his wife which makes it unsafe and improper for her to live with him.

ACTION for separation.

*William A. Wheeler,* for the plaintiff.

*Crane & Stedman,* for the defendant.

RODENBECK, J. The defendant has not established his counterclaim nor has he successfully met the cause of action set up by his wife.

The evidence of the serious matters alleged in the answer is so meager that the counterclaim deserves no consideration further than its denial, but the answer exhibits the length to which the defendant was willing to go to cast off his wife without support

and throws light upon his character as a loving, considerate and wronged husband such as he claims to be.

The defendant's testimony and that of his main witnesses, not including his mother, impressed the court as calculated to conceal rather than to reveal the truth concerning the marital relations of the parties and is discredited by their palpable efforts to keep from the court the facts that are necessary to a sound and equitable judgment.

The little daughter, Marion, had evidently learned her story by rote, either alone or with the assistance of others, so that she repeated it three times substantially *verbatim*. Her testimony was not so important but with that of the three hired men shows the lack of good faith in the defendant's defense. One of the hired men said that there were quarrels at the table on an average of every two weeks for the five seasons that he had been employed, while a second hired man who worked another season said that there were none during his term of employment, and a third who was employed still another season said that there was only one during the eight months that he was employed. This evidence is improbable and shows that these supporting witnesses were prejudiced and biased to the extent of being willing to conceal the truth and to evade the facts. One of these witnesses even joined in joking the wife within two months after her marriage about a young woman at the store in the village. Upon returning from an errand with the husband he said to the wife: " We have been up to see Libbie." It was a sad " joke " for a hired man to perpetrate and showed the spirit that pervaded the household. Another one of these hired men quibbled in answering a question because " cutting " and " hauling " were used instead of " pitching " corn and admitted on the stand that it was up to counsel cross-examining him to get the evidence out of him. " That is your place for to find out," he said. Another one of these witnesses could not recollect the substance of the quarrels at the table which he said occurred every two weeks until admonished by the court and then recalled two or three unimportant circumstances, while testifying that the wife frequently left the table in tears. One of those who sought to minimize the quarrels or forget them altogether denied that he had said in the presence of Mr. Irwin, counsel for plaintiff, that there was a good deal of " God-damning " while he was there, in which respect he was contradicted by Mr. Irwin on the witness stand, a bit of testimony that shows the unreliability of this man's whole evidence. Another of these three hired men denied that he had said that the wife had had a hard year when he was there and that he would have interfered if he had not thought that it would have

Misc. 485]                     Supreme Court, May, 1924.

made it worse, but he is contradicted by the father of the plaintiff with whom the conversation was had.   Mr. Irwin also testified that one of these witnesses said to him in effect that the defendant had called his wife a low down tough, which was denied by the witness.   Such evidence is not trustworthy and considering the manner in which it was given is not credible.   These three hired men, who have worked altogether seven seasons on the farm, slept in the house and eaten at the same table with the plaintiff and defendant, must know the real facts about their marital relations, but instead of detailing what they saw and heard, they hesitated, concealed and quibbled until their testimony lost its effect entirely.

The defendant himself did not make a good appearance on the witness stand.   He contradicted himself, corroborated his wife in some respects and fell back upon wholesale denials which did not impress the court as the story of a man who wanted to tell the exact truth about his married life and let justice take its course. He testified that his wife had refused to cohabit with him during the last three years, a most serious charge, and then admitted cohabitation during that period.

With reference to the incident alleged by him but denied by her about going out into the yard in a blizzard and sitting under a tree, he contradicted himself.  ·

With reference to two serious occurrences in relation to taking medicines to get rid of the child with which she was pregnant, he substantially corroborates his wife.

She claims he had a jack-knife in his hand on one occasion and that he said something about killing her and the children, while he said that she had made that statement and also the statement that he had threatened her, but admits that he had the jack-knife in his hand and was snapping the blade back and forth.

This evidence shows that these subjects, which are part of the bases of plaintiff's cause of action, were discussed, showing the likelihood of plaintiff's version, prompting her, with other acts, twice to leave the defendant.   The impression created on the mind of the court when the defendant had finished his case was that the witnesses, excepting his mother, sister and brother, had sought to give just as little information of the facts and circumstances as could be squeezed out of them or that they, excepting the defendant, were not present when the alleged cruelties and inhuman conduct were perpetrated.   The court is satisfied that this plaintiff has been subjected to specific acts of cruelty and inhumanity and to a course of conduct which no sensitive woman could possibly endure and which the law does not compel her to stand.   The defendant comes of a fine respectable family and may have a good reputation

among his neighbors, but the court is satisfied that he was harsh, cold, indifferent and callous in his treatment of his wife, was guilty of cruel and inhuman conduct toward her, and had she not left him, that she would not long have survived the treatment she received.  She showed a keen mind on the witness stand, and is evidently a woman of nervous temperament who could not endure constant quarrelling, harsh language and abusive treatment.  She did not impress the court as fabricating the serious charges made against her husband which, if only half true, are sufficient to justify a legal separation.  Civ. Prac. Act, § 1161.  The court believes that the defendant swore at her and called her harsh names, accused her of immorality and of having lived an immoral life, threatened or at least frightened her with a gun and jack-knife, slapped her on one occasion, intimating that her life and that of her children were in danger, and intermingled with these serious matters constant quarrels at the table which made her married life two months after the ceremony a constant round of irritations and mental distress which no one but the most indifferent and callous human being could possibly stand.

The plaintiff is entitled to a separation, the custody of the two children of her marriage with the right of visitation to be fixed in the decree, and ten dollars a month alimony, subject to modification hereafter, together with the costs of this action.

Ordered accordingly.